### ROSENTHAL et al. v. STEIN et al.
No. 13596.

United States Court of Appeals
Ninth Circuit.
June 26, 1953.

Fulwider, Mattingly & Babcock, Los Angeles, Cal., for appellants.

634

Miketta & Glenny, Los Angeles, Cal., for appellees.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

STEPHENS, Circuit Judge.

Appellees, as plaintiffs in the United States District Court for the Southern District of California, were victorious over appellants, as defendants, the court holding, contrary to defendants' claims, that the latter had infringed and were infringing plaintiffs' *work of art* copyrights upon four statuettes. The statuettes represent respectively an Egyptian male dancer, an Egyptian female dancer, a curved ballet male dancer, and a curved ballet female dancer, each clothed in character and posed upon a substantial base.

The parts of the copyright act applicable here are:

"Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right: (a) To * * * *copy,* and *vend* the copyrighted work; * * *." [1] [Emphasis ours.]

Section 5 of the same title provides the copyrightable classifications from subsections (a) to (m) inclusively. The classification involved in the three statuette cases referred to herein, is:

"(g) Works of art; models or designs for works of art." [2]

Appellants do not claim the right to *copy* or to *vend* the figures as statuettes. They admit the validity of the copyrights and that they are owned by appellees, but they do claim the right to make and to sell, and admit that they do make and sell, exact copies of the statuettes as copyrighted except for an unseen pipe extending from the bottom of the base through the length of the figure and obtruding very slightly above the headdress. Through the pipe an electric cord is drawn and upon or in the protrusion an ordinary electric light socket is screwed. The assembly is now ready for the light bulb and shade, and is a lamp.

Appellees, as owners of the copyrights, do the very same thing, advertise the lamp pictorially, and do an extensive business selling them. In fact, appellees first adapted the statuettes to use as lamp stands and appellants followed with their acts of copying.

Appellants are of the view that, while a copyrighted work of art may not be copied and sold without the consent of the copyright holder, yet when the object copyrighted is combined with something else and the resulting combination is a utility, the combination is not a copyrighted work of art and is not and cannot be protected by the copyright law. District Judge Tolin, in the instant case, Stein v. Rosenthal, 103 F.Supp. 227, was not impressed with appellants' view and held, in effect, that the copyrightee could use the work of art as a component part of a functional article manufactured for sale as such, but no one else could do so without paying tribute.

Before Judge Tolin's decision in the instant case, the United States District Court for the Northern District of Illinois, Judge La Buy presiding, had the same point before it in the case of Stein v. Expert Lamp Co., 96 F.Supp. 97, and the court held just the opposite from the district court holding in our case. The copyrighted objects in suit were created by the same artist who created the copyrighted objects in our case. The statuettes therein were entitled "Sculptured Figure of Male Balinese Dancer" and "Sculptured Figure of Female Balinese Dancer". The court's opinion revealed the fact the court had mistakenly thought the original of the statuettes had been copyrighted, equipped for use as electric light standards. The court later corrected the error but adhered to its decision. The United

---

1. Title 17 U.S.C.A. § 1, July 30, 1947, c. 391, § 1, 61 Stat. 652; derived from § 1, Title 17 U S.C., 1946 ed. (Act March 4, 1909, c. 320, §§ 1, 64, 35 Stat. 1075, 1088), without change; since amended but without change in the quoted section, July 17, 1952, c. 923, § 1, 66 Stat. 752.

2. Title 17 U.S.C.A. § 5, July 30, 1947, c. 391, § 1, 61 Stat. 652; derived from § 5 of Title 17 U.S.C., 1946 ed. (Act March 4, 1909, c. 320, § 5, 35 Stat. 1076; Act Aug. 24, 1912, c. 356, 37 Stat. 488; Act July 31, 1939, c. 396, § 2, 53 Stat. 1142), without change.

States Court of Appeals affirmed the decision, Stein v. Expert Lamp Co., 7 Cir., 188 F.2d 611.

Subsequent to the two above referred to decisions and the affirmance of the Expert Lamp Co. case in the Court of Appeals, the same point was before the United States District Court for Maryland, Judge Coleman presiding. Stein v. Mazer, D.C., 111 F.Supp. 359. The statuettes therein were the six involved in the two actions above cited. The Maryland District Court, with the Illinois federal court and the California federal court opinions before it, followed the former. Upon appeal, the United States Court of Appeals, with the foregoing cited opinions before it, quoted liberally from the California District Court opinion and, agreeing generally with it, reversed the judgment. Stein v. Mazer, 4 Cir., 1953, 204 F.2d 472.[2a]

A reading of the opinion last cited above will reveal the fact that the issue is complicated with the subject of design letters-patent. The law as to design patents is in part as follows:

"Any person who has invented any new, original, and ornamental design for an article of manufacture, * * * may * * * obtain a patent therefor. * * * "[3]

It should be kept in mind, however, that no application for a design patent has ever been made in either of the three actions which we have referred to, but that the creator of the original statuettes in each of the actions has received the exclusive right to "copy" and "vend" them under the grant of the copyright privilege.

█ We do not read the design patent law as stronger or prevailing over the copyright law, hence we are of the opinion that when the creator of the statuettes was granted copyright privileges as to them, such privileges became rights and cannot be affected by a speculation that possibly the objects could have been patented as designs. And such rights cannot be affected by the gratuitous use of the creations by strangers for ornamental supports for a household utility—in this case a lamp. The theory that the use of a copyrighted work of art loses its status as a work of art if and when it is put to a functional use has no basis in the wording of the copyright laws and there is nothing in the design-patent laws which excludes a work of art from the operation of the copyright laws. We agree with the note to the article in 66 Harv.L.R. 882 [3a] that "The argument that useful articles purporting to be works of art should be excluded from copyrighting because they may qualify for design patents is not convincing."

█ The area in which a thing would be either a copyrightable work of art or a patentable design, but not the other, is perhaps unsurveyable. Whether a thing is a work of art or a patentable design, or is a patentable design and not a work of art, cannot be determined by excluding one from the other. A thing is a work of art if it appears to be within the historical and ordinary conception of the term art. A thing is a design by the same token. The two are not necessarily distinct one from the other. Neither goes to the functioning of a utility.

An opinion on copyright would be unusual indeed that did not mention the case entitled Bleistein v. Donaldson Lithographing Company, 1903, 188 U.S. 239, 23 S.Ct. 298, 300, 47 L.Ed. 460. This is the celebrated circus poster case in which Justice Holmes discoursed upon art and copyrights. Plaintiffs sued defendant to recover the penalties prescribed for infringement. The objects copyrighted were chromolithographs which, as circus posters, were es-

---

**2a.** But cf. Stein v. Benaderet, D.C.E.D. Mich.1952, 109 F.Supp. 364.

**3.** Title 35 U.S.C.A. § 73, R.S. §§ 4929, 4933; May 9, 1902, c. 783, 32 Stat. 193; Aug. 5, 1939, c. 450, § 1, 53 Stat. 1212; R.S. § 4929 derived from Acts July 8, 1870, c. 230, § 71, 16 Stat. 209; June 18, 1874, c. 301, 18 Stat. 78; R.S. § 4933 derived from Act July 8, 1870, c. 230,

§ 76, 16 Stat. 210; since amended but without material change in the applicable quoted portion, Title 35 U.S.C.A. § 171, July 19, 1952, c. 950, § 1, 66 Stat. 805.

**3a.** "Protecting the Artistic Aspects of Articles of Utility: Copyright or Design Patent?" 66 Harv.L.R. 877, note 31, p. 882.

pecially adapted to advertise "Wallace" shows. After Wallace had "given them up" they were "used by less pretentious exhibitions * * *." The trial court found for the defendant. It has been suggested that the posters could not be the subjects of legal copyright because they were not art and because they were *used* commercially. The court said, 188 U.S. at page 251, 23 S.Ct. at page 300, "Again, the act, however construed, does not mean that ordinary posters are not good enough to be considered within its scope. The antithesis to 'illustrations or works connected with the fine arts' is not works of little merit or of humble degree, * * * it is 'prints or labels designed to be used for any other articles of manufacture.' Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd, and therefore gives them a real use,—if use means to increase trade and to help to make money." Bleistein v. Donaldson Lithographing Company, supra [The double quotations are from the copyright statutes relevant to the cited case].

■ Under the principles of the Bleistein case a work of art appears to be no less subject to protection of a copyright if it is prepared for and used commercially as a means of making money. We know of no authority to the contrary. And we think the principle or the teaching of the case is that the protection given by a copyright on a work of art is not lost by its double service of displaying its artistic quality while supplying a practical function of a utility article.[4]

■ We discern no possible conflict in these permissible uses of a copyrighted work of art and appellees' use of their copyrighted statuettes in connection with an ornamental lamp—an object widely used in the decorative qualities of a well-dressed home room.

In Pellegrini v. Allegrini, D.C.E.D.Pa., 1924, 2 F.2d 610, the comparative qualities of copyrights, design patents, and trade marks and unfair competition are analyzed and the holding is confined to what degree of likeness is necessary to infringe a copyright. There is no question in the case as to use of copyrighted "work" as a component part of another thing, to-wit, a common utility. It holds, however, that it is not necessary to infringement that the accused work should be a "Chinese Copy" of the copyrighted work. The doctrine of this case seems to dispel the suggestion that the statuettes lose their status as copyrighted objects when the electric assembly is cast in or mounted upon them. While the statuettes with the electric assembly added may be applied to the utility use as a lamp stand, they continue in their aesthetic use as art. In fact, with the electric light reflected downward by the usual ornamental shade, the art is shown to greater advantage.

United States v. Backer, 2 Cir., 1943, 134 F.2d 533, is a figurine copyright infringement case involving profit.

■ We think Judge Dobie in Stein v. Mazer, supra, put the matter most admirably, 204 F.2d at page 477: "Concededly, a copyright does not purport to give to the copyrightee any rights to the mechanical or utilitarian uses of a work of art. A copyright does, however, protect the work of art *qua* work of art without regard to any functional use to which it might be put. A subsequent utilization of a work of art in an article of manufacture in no way affects the right of the copyright owner to be protected against infringement of the work of art itself. The critical inquiry, therefore, is not whether the particular work sought to be registered has utility but whether it is a work of art irrespective of its utility."

■ And Judge Tolin in his opinion in the instant case, Stein v. Rosenthal, D.C. 1952, 103 F.Supp. 227, 230, brought the principles of copyright home when he said: "The point, insofar as this case is concerned, is simply that the copyrighted material is in itself non-utilitarian and non-

---

4. On this point the following cases are cited in the Court of Appeals' opinion in Stein v. Expert Lamp Co., 7 Cir., 1951, 188 F.2d 611, at page 613 [4–6]; Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841; Kemp & Beatley v. Hirsch, D.C., 34 F. 2d 291; cf. Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L.Ed. 731; and Taylor Instrument Companies v. Fawley-Brost Co., 7 Cir., 139 F.2d 98.

mechanical. Protection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable merchandise. The appropriateness of copyright registration is determined by the character of the registered work of art as registered and not by the ability, intent or hope of the registrant to use it as a dress for a utilitarian object. Copyright protection is not reserved exclusively to proprietors who do not intend to earn money by commercialization of their art."

Both Judge Dobie's and Judge Tolin's opinions may be consulted with profit. Judge Dobie has added applicable regulations promulgated by the Copyright Office.

We hold that appellants infringed appellees' copyrights. The judgment is affirmed.

Affirmed.

### On Motion to Strike

The motion to strike certain portions of the record on the ground that they had no use in the appeal is denied. Upon reviewing the record it becomes apparent that appellants and appellees could have cooperated through their attorneys to materially shorten the record. They did not do this and we are not prepared to hold that appellants included anything in their designation which they did not in good faith believe was necessary in the appeal.